Moore, J.
It is sought in this proceeding to reverse the judgment of the Court of Common Pleas of this County, rendered in favor of .Mattie Deubler, administratrix of the estate of Edward Deubler, against The Lima Electric Light and Power Company.
The action was brought in the court below under sec. 6134 of the Revised Statutes, for causing the death of Edward Deubler, the petition alleging briefly and in substance, that the defendant below, The Lima Electric Light and Power Company, at the time of the death of the plaintiff's intestate, owned and operated, in the city of Lima, a plant and power station for the furnishing of elecric light for public and private use, and for such purposes owned and controlled dynamos, wires, poles and all appliances necessary to carry on such business.
That the deceased, Edward Deubler, on the first day of July, 1890, while engaged in his usual occupation as an employe of one A. Watson, a groceryman of this city, and without any knowledge or warning that danger was to be apprehended, came in contact with a wire that connected with a guy wire belonging to the defendant, which guy wire was heavily charged with electricity from defendant's batteries. That by the contact with the wire I have mentioned, a heavy charge of electricity passed into the body of Deubler, causing his immediate death. That the defendant carelessly and negligently constructed and maintained the guy wire, and also the wire from the plant and power station to and about the pole at the northeast corner of Main and High streets, where the guy wire was attached to the pole. That the electric light wireat *187 said place was not sufficiently covered so as to insulate the same, and had remained in such condition for several weeks prior to the death of Deubler. That the electric wire was permitted to come in contact with the guy wire, charging it with electricity, and that it communicated with the hanging wire, which came in contact with Deubler, causing his death.
The petition also avers, that the defendant below did not, or had not, for several months prior to Deubler’s death, made any reasonable or proper inspection of its said wires at the intersection named, or elsewhere, and that by reason of such negligence — which is much more fully averred than this brief summary puts it — Edward Deubler’s death was caused. The petition also avers that the deceased was 25 years of age— sober, industrious, etc. That the deceased died intestate, without issue, and leaving, as his next of kin, Mattie Deubler, his widow. That a right of action has accrued in favor of the plaintiff, and she asks damages in the sum of ten thousand dollars.
To this petition a demurrer was interposed, overruled, and exceptions taken.
The defendant then answered the petition, and afterwards filed an amended answer.
The amended answer alleges: “That the defendant, The Lima Electric Light and Power Company, is a body corporate under the laws of Ohio, and owned and operated in the city of Lima, a plant and power station for the furnishing of electric light for lighting the streets, bridges and public places of said city; and also the business places of the citizens of said city, and at that time owned and controlled wires, poles, dynamos and other appliances to convey and furnish such electric light for the streets of said city, public places aud business houses, and which it had the right to so erect and furnish.
“ That defendant admits' that on the first day of July, A. D. 1880, Edward Deubler was engaged, as he had been for some *188 'time previous, as an employe of A. "Watson, in the'grocery of ' said. A. Watson, situated in said city.
“That said Edward Deubler left no children, and no estate, except household goods.
“Defendant avers that all said company did in the way of fur- ■ nishing lights, erecting poles and stringing wires, was done in the lawful prosecution of its said business of furnishing lights in the aforesaid manner.
“That defendant admits the decease of the said Ed ward Deu'bler, but denies that it occurred in the way or from the cause or causes averred in the petition.
“And for further answer, defendant denies each and 'every allegation in said petition contained, not herein admitted.
•’ “Second defense — Defendant says that said Edward Deubler would not, if his death had not occurred, been entitled to have "maintained any action and recovered therein damages against this defendant; therefore defendant denies that plaintiff has any right, under the laws of Ohio, to maintain this action.”
The affirmative allegations of the answer were.denied by the reply in this action.
Upon the issues just máde a trial was had, resulting in a verdict and judgment for plaintiff.
'■ A motion for a new trial was interposed, which was overruled, and exceptions taken.
" A petition in error is filed in this court, and the errors assigned are:
' 1. Said court erred in overruling motion of plaintiff in error to set aside the verdict therein rendered, and for a new trial.
2. Because the petition of the defendant in error does not state facts sufficient in law to constitute a cause of action, and because the court erred in overruling plaintiff’s in error demurrer to said petition of the defendant in error in said court.
' 3. That the court erred in the admission of certain evi *189 dence in the trial of said cause, objected to by plaintiff in er-.. ror at the time.
4. That the said court erred in overruling the motion ot plaintiff in error to take the said cause from the jury after the , defendant in error had rested her case.
5. That the court erred in its charge to the jury.
6. That the court erred in entering judgment against said . plaintiff in error on said verdict.
7. That the court erred by. refusing to charge the jury as . requested by defendant.
8. And for other errors prejudicial to plaintiff in .error, manifest on the face of the record.
The first question is, did the court below err in overruling., the demurrer to the petition? The defendant makes two propositions.
First — That the averments of the petition do not show that if Deubler had lived he would have had a right of action against the defendant below, inasmuch as it is not averred “that the act, neglect or fault complained of in the petition was such that if death had not occurred, the party injured would have had aright to maintain an action and recover., damages in respect thereof.” Such is the language of the statute, and to have so plead would be more in the form of a conclusion than a fact. If such facts are plead to make the negligence of the defendant the cause of death, and that by the infliction of physical or bodily injury, it is very difficult to see why, if the deceased had survived such injury, he should not have a cause of action against the wrongdoer. We think., just such facts are plead in this petition.
The second proposition is, if we understand counsel fully, that the wife, or rather widow, is not “next of kin” under the , provisions of the statute so as to maintain the action.
The petition avers that..Edward Deubler died leaving no children, and leaving surviving him, his only next of kin, his , widow, Mattie Doubler, This claim is settled by a fair construction of the statute. Section 6135 provides: “Every. *190 such action shall be for the benefit of the wife or husband and parents and children, or if there be neither of them, then of the next of kin, of the person whose death shall be so caused, and it shall be brought by and in the name of the personal representative of the person deceased.”
We think no such narrow construction as is claimed for it • can be given' to this statute, and that it should be construed so that the wife or the husband, or the wife and children, or the husband and children, or the next of kin could maintain the action.
We find no such difference between the statute as it exists now, and as it formerly existed, as is sought to be made in argument.
We read briefly from the case cited by counsel, the case of Steele, Administrator v. David Kurtz et al., 28 Ohio St. 191. The first paragraph of the syllabus reads : “In an action by the personal representative under the statute of 1851, to recover damages by causing by wrongful act and neglect the death of a woman, who died intestate leaving a husband, but no' children or their legal representatives — Held: The surviving husband is, within the meaning of said act,- the next of kin, and as such entitled to the fruits of any judgment obtained in the action.”
In the same case the court says: “ The act of 1851 substantially provides : Whenever the death of a person is caused by the wrongful act, neglect or default of another person or corporation, a cause of action is given in every case where, if death had not ensued, the person killed would have been entitled to recover damages for the injury sustained in respect thereof. This action is to be brought by and in the name of the personal representatives of the deceased person, for the exclusive benefit of the widow and next of kin of such deceased person ; the damages recovered are directed to be distributed to the widow and next of kin, in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate. The jury may give such damages *191 as they shall deem fair and just, not exceeding five thous- and dollars, with reference to the pecuniary injury resulting from such death to the wife and next of kin to such deceased person.
“ The words ‘wife and next of kin ’, used in this last clause, were no doubt intended to designate the same persons as ‘ widow and next of kin ’ in other parts of the same section of the statute.”
And again the court says: “It is urged that the phrase, ‘ next of kin ’,'in connection with the word ‘ widow’, as designating the beneficiaries, necessarily excludes widower and husband. This is too narrow a construction of the statute, and would in part defeat the manifest purpose of the legislature. If we expect to find all the statute laws perfect and harmonious, free from all ambiguity, we shall be disappointed. It is the business of courts, where it can be done, to find and dt clare the moaning of legislative enactments. In this case, the language used is not ambiguous, but rather to be considered incomplete. Yet the policy of the statute and the language used give a clear indication to legislative meaning.”
The phrase “next of kin” is a comprehensive one. Bouvier, in defining it, says, “ The term is used to signify the relations of a party who had died intestate.” “ In general, no one comes within this term who is not included in the provisions of the statutes of distribution,” etc. As used in the statute, it comprehends all those- persons who are entitled to stand in the order of inheritance under the statute of distribution, in the case of personalty.” It is not necessary to read further. We are of the opinion that the court very properly overruled the demurrer to the petition.
It is next claimed that the court erred in overruling the motion for a new trial, on the ground that the verdict is not supported by the evidence.
The record is quite voluminous, and undoubtedly evidence, to quite an extent, although proper to be given, did not aid the j my very materially in determining the case.
*192 I shall not undertake to go into detail or to rehash at any length the evidence offered — I will state, however, that the testimony shows, that the guy-wire was discovered to be charged with electricity some time before the accident. This is shown by the testimony of Will B. Craig, on page 19 of the bill of exceptions. He says he saw Will Knoup touch the post, and he jumped back. Then Craig touched the post and was shocked. This was a week or ten days before the death of Deubler. Will Knoup testifies to the same on page 62. It is shown by the testimony of Knoup that a wire hung down from the guy-wire, near to the ground — that it hung there three to four weeks prior to the accident. (Page 60).
Hugh Patton saw this hanging wire the night after DeublePs death. He saw it hit with- a board, and when they touched the wire the fire flew from it. (Page 147).
William Botkins saw Deubler at the time he came in contact with the wire, and at the same time saw a flash of light. (Page 86.)
The deceased was burnt where the wire came in contact with his arm.
He was killed. Physicians testify that DeublePs death was caused by electricity.
From the testimony the jury might well conclude that the loose wire had been hanging upon the guy-wire for three to four weeks, and that the guy-wire had been charged with electricity for ten days.
The testimony shows the loop on the pole at the corner of High and Main streets was permitted to come in contact with the guy-wire, and that owing to a lack of proper insulation in the loop, which formed a part of the conducting wire, the guy-wire became charged' with electricity.
This could have been avoided by so securing the loop at the time it was put up that it could not come in contact with the guy-wire. It could have been avoided by putting circuit breakers in the guy-wire. It could also have been avoided by making use of insulated wire for the guy-wires.
*193 There is testimony tending to show that the superintendent knew of the condition of things at the corner of High and Main streets before the accident occurred. This is shown in the deposition of Patrick Allen.
There is testimony tending to show that however perfect the insulation of the underwriter’s wire, which was in use for conducting wire, may have been when first put up, it became unsafe through the action of the elements, and for that reason would require careful inspection.
We cannot say that the jury might not conclude that the defendant knew or ought to have known by the exercise of such diligence as the use of a dangerous element required, that the wire at the corner of Main and High streets was in an unsafe condition, and being in contact with the guy wire, rendered that wire dangerous to all who came near it.
This is sufficient to show that the averments of the petition are sustained, and sufficient to support the verdict of the jury.
The question is not whether we would have found as the jury did, but is the verdict manifestly against the weight of the evidence? We are not prepared to say that it is, and it is not our province to disturb it for that reason.
Considerable argument is indulged in upon the proposition that if the neglect of the defendant in adjusting and maintaining the electric wire caused the injury, it was the remote, and not the proximate cause. That is, if we comprehend the position taken, that even though the defendant was negligent in permitting the main wire to come in contact with the guy wore at the pole on the corner of Main and High streets, still there was another intervening act of negligence, for which the defendant was not responsible, and but for which the accident would not have happened. That is, in putting the loose wire over the guy wire, and which wire came in contact with the body of Deubler causing the death.
This is to be answered by merely stating that the evidence tended to prove that the loose wire had remained so long Up *194 on the guy wire that by reasonable care and prudence, the defendant should have known it. Also that by such care the defendant should have kifown the guy wire was charged with electricity. So these facts being found, the negligence was the proximate, and not the remote cause of the injury.
Exceptions were taken to the introduction of evidence. These exceptions are to be found scattered through a record of some five hundred pages of type-written matter, without a single marginal reference. I will call attention to Rule 1, of the circuit courts of the state : “Bills of exceptions ndust be printed or written in a plain, legible hand, upon but one side of the paper. Each page must be numbered, and there must be marginal references to the important parts relied upon. Each bill of exceptions must contain a full index, must have a paste-board, or other substantial cover, and in no case shall it be folded or rolled, etc.”
Without a compliance with this rule it is almost impossible for the court to review exceptions to the admission of testimony, and with the accumulation of business and the method adopted in preparing such voluminous bills of exceptions— even to raise mere questions of law — we are compelled to enforce the rule. The rule was adopted to facilitate the transaction of the business of the court, and we find it a very necessary one.
Because of the failure to comply with this rule, we refuse to consider questions raised upon the introducti'o,n of testimony, and the entry will so show. I might add fnrther, that this rule was adopted at the first meeting of the judges of the circuit court in 1885, and it has been upon the journal of the circuit court ever since that time. The attention of counsel and of the bar has been called to it at almost every term of the circuit court, and while we were lenient for some time after the adoption of the rule until it could be fully understood, the vast amount of business and the extensive records furnished to us, compel us to enforce this rule, and we do it in this ease; so, for that reason, as I have said, we refuse to *195 examine this record and hunt through it page by page, to ascertain where an exception was taken to the introduction of testimony.
Cable & Parmenter, for plaintiff in error.
J. L. Price, for defendant in error.
The defendant below asked certain charges to be given; some of which were undoubtedly correct, but upon an examination of the charge of the court, we are satisfied they were substantially incorporated in the charge, and the court was not required to repeat them.
Exceptions were attempted to be taken to certain portions of the charge as given. We think these are not saved. They are attempted to be saved in this manner: “The defendant excepts to that part of the charge of the court where it stated that the defendant should make careful inspection so as to detect any defects in the insulation of its wires. Second — As to the statement of the court that the answer admits that the defendant furnishes motive power. Third — The charge in regard to the degree of care required of the defendant, and also as to the use of the word “highest.” Fourth — As to the rule laid down as to the failure of the defendant to see and remove loose wire from the guy wire.”
These various matters exist and run through the charge, and we are not called upon to go through the charge and determine just what portion of it was excepted to, or intended to have been excepted to, by the party who sought to take the exception. Exceptions to a charge must fix definitely what is objected to, as has been repeatedly held and ruled upon by the circuit court of this county.
The judgment of the court below will be affirmed, with costs, but without penalty. Cause remanded to the court below for execution of the judgment below, and for costs.